is Garrett versus Wexford Health and now you Mr. Berg. Thank you your honor and may it please the court. I'd like to reserve three minutes for rebuttal. Granted. Thank you. Mr. Garrett's third amended complaint filed when he was no longer a prisoner was not subject to the PLRA for two reasons. First, the PLRA's Rule 15 or the practices there under and therefore under Jones v. Bach, those normal practices must apply and control here. And whether we look at Rule 15a or d, the practices under either provision of Rule 15 dictate that Mr. Garrett's status as a non-prisoner at the time of amendment must control over his status as a prisoner at the time of the original complaint. And second, the Excuse me your honor. Is that by virtue of the relation back principle? No your honor, it's not because Mr. Garrett does not need to fix a statute of limitations issue here because certain of the very first incidents that gave rise to this suit were in early January of 2014, which was slightly more than two years before his told under the statute of limitations under this court's decision in Pearson. Since we have four amended complaints, those claims set forth in which complaint? In the third amended complaint, which was filed on February 5th. Is the third amended complaint an amended complaint or a supplemental pleading? It's our position that it's both your honor. How is that? Because the test for determining whether something's a 15a amended complaint or a 15d supplemental is whether the complaint adds some fact or changes some facts. Is there any case law that says that an amended pleading, an amended complaint can be both amended and supplemental or that says it can't be? Your honor, I have found no cases that have addressed the question in those terms, but I have found several cases involving a complaint that is labeled amended and supplemental. And so does that leave us simply with Rule 15 as the law which we must interpret here for determining whether it's possible to be both or cannot be both? Well, your honor, I think that ultimately the difference shouldn't matter, which is the second part of your question. But just to explain and to clarify classification first. So the reason we believe it's both is because the general test is an amendment to the facts or claims that arose before the original filing. And the third amended complaint does that. It drops certain specific allegations, specifically in the first amended complaint on Joint Appendix 71 to 73. They're slight, but Garrett makes specific allegations that Dr. Nagy, for instance, ordered that muscle relaxant Baclofen be discontinued at 530 a.m. on similar examples, but that's just one example to show that the third amended complaint does drop certain allegations in prior complaints, which garners 15a status. But it also raises new claims that are based on events that occurred after the prior pleading, the last pleading he filed in prison, which would garner 15a. So which is subject matter for amendment purposes and which is subject matter for supplemental purposes? I think it can be both, your honor. I think the question is more just about which claim... There has to be a difference, otherwise the rules makers would not have differentiated the two in Rule 15. Yes. And the difference, I think, is it can be both because both means that you're changing based on events that occurred prior to the original filing, but it can also be supplemental if it raises claims based on events that happen after that original filing. Are there different consequences if we deem it to be amended as opposed to supplemental? And if we do both, how are those consequences, how did those consequences play out? In this case, there would not be different consequences, and here's why. Under Rule 15a, the entire amended complaint completely supersedes and renders the prior pleading a nullity. This court recognized that in Palachowicz v. Wetzel. The rule doesn't explicitly say that, though, does it? I mean, that's a product of case law. But it's the practice under the rule. So it becomes the amended complete pleading always becomes the operative. Yes, Your Honor. And under Rule 15d, the case law is less clear whether a 15d supplement completely replaces the prior, but it doesn't matter. Well, I mean, you have to concede that there's a different consequence, right? In an amended, sure, it replaces it, but that's not what the case law says about supplemental, and that's why we have a conundrum, isn't it? Well, so I would qualify that by saying the Wright and Miller treatise you cite in your letter has language that suggests that. It says, the language in your letter says, from Wright and Miller, that amended and supplemental differ, and one of the ways that supplemental continues the prior pleading. That passage is based on, I believe, five or six district court cases from before 1963, when the Rule 15d was amended to its current form. And more current case law, the Ninth Circuit's decision in Jackson v. Fong, and language in Maddox v. Edelman, and some language from some Seventh Circuit cases that both of those decisions cite, suggest that Rule 15d supplements may sometimes supersede, but here's why it doesn't matter. Because even if a 15d does not supersede and replace, at the very least, it must be the case. So we know that Rule 15d lets a And it must be the case that that new fact, to the degree it conflicts with a prior fact that caused the defect, that new fact must supersede. Because otherwise, a litigant could never use Rule 15d to raise a new fact to cure a defect. Because any time a new fact cures a defect, it necessarily conflicts with a fact that causes the defect originally. And here, the new fact that's relevant is that Garrett was released from prison. And I'd like to point out, it's clear that had Garrett filed a new amended complaint, he would not be subject to the PLRA, because he's no longer a prisoner. And that shows that released prisoners are not subject to the PLRA. So the narrow question in this case is purely whether Mr. Garrett should be barred from reaching the merits. It's all this academic, because if I understand the facts, and tell me if I'm wrong, once we get to the third amended complaint, the medical defendants, everything's exhausted just before the second amended complaint. So to the extent that there's anything related to the medical defendants in the third amended complaint, there is no exhaustion problem. And as I understand it, the DOC defendants haven't raised exhaustion. So from that standpoint, you're good. Your Honor, yes, that is one way that you can rule for Garrett. And we agree that you can reach that out. And I would like to just note, the DOC defendants raised an exhaustion defense below, but it was not ruled on. So you're right, it's not in front of this court. So correct, Mr. Garrett properly exhausted his medical claims on April 17, 2014. Granted, he filed his lawsuit before that. However, you're right, he filed a subsequent amendment. And I'd also like to point out that none of the defendants in this case even filed a response until September of 2014, which is about five months after Mr. Garrett exhausted. So at the time that the litigation really got going, you're right that, in addition to that, rather, that Mr. Garrett was simply not subject to the PLRA in the first place. So he wouldn't have even needed to exhaust because had he filed the same exact complaint in a new docket, he would not have been subject to the PLRA. Ahmed is eviscerated though? Excuse me? I said, Ahmed is eviscerated though? Oh, yes. So Ahmed, I don't believe is eviscerated. And here's why. So there's two ways to read Ahmed. First, you could frankly read it to cut against our position. And if that's the case, as we point out in our brief, Jones v. Bach would require this court to move on from it. Because Ahmed can only make sense if you accept the premise that the PLRA silently displaced Rule 15d, which the only two courts after Jones v. Bach to address the question said it did not, and which this court has already accepted for Rule 15 in two prior cases, Shane and Grayson v. Mayview Hospital. However... That can't even be applicable here. It involves a case that went to final judgment, right? Correct, Your Honor. And that was going to be my next point, which is that the plaintiff in Ahmed had a final judgment while he was still in prison and clearly subject to the PLRA. He never filed a motion to amend and the district court never ruled on one. It was only once he was out, he said, I'm going to collaterally attack this final judgment and say, now I've been released. And if you're going to do that, you've got Rule 60 and Rule 59 available to you, right? Correct, Your Honor. And that's, of course... And that's what it was in Ahmed, right? Yes. Yes, Your Honor. And so for that reason, there's a way to find harmony between this case and that one. So I just want to go back to the statute of limitations issue. So let's assume it can be both amended and supplemental. But clearly, there are claims in the TAC that would clearly not fall within supplemental. They don't deal with facts that occur after the original pleading, right? So in that instance, to the extent that part of it is deemed an amended complaint, why don't you have a statute of limitations problem with regard to some of the claims asserted? Because obviously it exceeds two years. Yes, so it exceeds two years. But what this court said in Pearson, the is... So we interpret the Pennsylvania statute of limitations, and part of that statute says that the statute is told when there's a statutory prohibition on bringing a suit. And so Pearson said that that applies to PLRA cases. And so when a prisoner is grieving his administrative grievances, like Garrett was, the statute of limitations is told. And so Garrett was grieving his administrative grievances from at least January 13th, 2014. He got to this prison January 9th, and he filed his first complaint on February 14th, 2014. And so at the very least, the statute of limitations would be told from that period from January 9th to February 14th under Pearson. And so if that's true, there's no statute of limitations issue. I thought there were claims that you raised after February of 2014 against the I thought there were some. Yes, Your Honor, there were. But those events would not be time barred because so so the most recent and if it was there after April. No, Your Honor. So so the. Garrett filed his third amended complaint on February 5th, 2016, and so. And OK, yes, so those claims are less than two years, like less than two years have passed. And but I just want to point out as well, in any event, relation back would be clearly satisfied for the claims that happened before, because if Mr. Garrett's raising them later, the test for if something relates back is does it arise out of the same thing? I know Judge Chigaris has been trying to get a question. No, it's just to be clear, do you concede any of these claims are not viable anymore? As we know, we're all talking about Mr. or Judge Chigaris. I'm out of time, but that's right. So the claims that we pointed out, I those are all viable claims and I'm not conceding that those are not viable. I will note that there are portions of Mr. Garrett's complaint that may not raise claims, but he clearly raises several specific claims and those are viable. Thank you, Your Honor. He's coming back. All right. Thanks very much. We will have you back on rebuttal. Good morning. Please, the court. My name's Kamal Alexander Marichli and I represent the Department of Corrections, Appellees in the present case. And my concerns, unfortunately for the colloquy that preceded me, are completely different. And they have to do with whether or not the district court properly dismissed the fourth amended complaint against my clients. Well, let's focus on that. So in your briefing, the assertion, as I understand it, is it's a lot of fluff what's going on, essentially. Yes. My word's not yours. Yes. But in your brief, you talk about seven specific incidents. Yes. Now, it seems to me that if you're going to argue that it's nonspecific and fluff, if you will, the fact that you're arguing about seven incidents means that there is some degree of specificity and Rule 8 would appear to at least on its face be met. That's an excellent question. And I'm prepared to address it. We're also interested in excellent answers. So wasn't Rule 8 used as a club here to knock out the entire complaint? First, to respond, I don't believe it was used as a club because you have to look at the entire history of the case and his persistent failure. This was the fourth. So Rule say that? Well, I'm prepared to advocate that the case law should interpret Rule 8 to permit the judge to exercise her discretion to dismiss the fourth amended complaint when the appellant has persisted arduously in refusing her instructions. And I would like to get back to your question. I want you to achieve the objective that's been set forth for you, right? We want an excellent answer. All right. And so answer the question if you would. I'm not trying to evade it in any way. The seven specific instances? I was responding to the seven specific bullet points that my learned opponent presented as discernible within the complaint. I was not conceding that they were, in fact, discernible or represented appropriate claims. What I was doing was responding in arguendo that even were they claims presented in the brief and even if Rule 8 did not justify dismissal of this case, then Rule 12B6 would because none of those claims are against parties who've been served. And as of June 20th, 2014, Mr. Garrett was aware of how he had to provide. Why would you want 12B6 to apply? I don't want it to apply unless it's in arguendo. I think if you would even accept his premise that there are seven discernible claims in this case, there's seven claims that just simply do not function as a basis on which relief can be granted. What did the district court hold? The district court just didn't like the complaint. That's correct. It was, I mean, you know, don't we hit a slippery slope here if we say, hey, it's just too long? All the rule calls for is a short and plain statement of the claim, right? That's why I have a lot of things. Yeah, that's why I asked you to consider the whole thing in context. He wrote an original complaint. Then he wrote an amended complaint. Then he wrote a second amended complaint. I'm sorry, counsel. I still fail to understand why context matters as a district court examines a specific pleading, in particular, subject to the language of rule eight. Both the language, short and plain, as well as our standard of review under use of discretion would seem to provide the district court here with considerable discretion, or at least with deference when it's on appeal to us. But we're looking simply at the one pleading. What's context got to do with it? We got a 16 page pro se complaint at this point, right? Right. It's been whittled down. Yes. You cite in Ray Westinghouse in your brief. Yes. I know a little bit about that case. I was the district court judge who handled it. Yes. It was 240 pages. Yes. That ain't this case, right? No. Okay. I mean, it's... Nor was it pro se. It was a very experienced plaintiff's class action, counsel. I see my time. That's all right. Okay. Thank you. It really... I prefer that you look at this as a course of conduct because it's an abuse of discretion standard on the judge. And obviously she was taking into consideration everything else happened. But let's say we don't. In that case, we focus on this as a fourth amended complaint. It's unsatisfactory in a variety of ways. The difference that... If there's one point I would ask you to take away from this in terms of my position, it would be if in such a prolix dense jumble, you can discern... Referring to the 16-page complaint as a prolix dense jumble. I think so. If you read it, you will find it's, for instance... These plaintiffs don't have law degrees, right? I understand. He's talking about a pro se plaintiff doing the best he can and basically cut his complaint by more than half. I understand. And you argue in your brief about the seven discernible incidents and you present your argument as though you are speaking in the lens, if you will, of summary judgment. We're not there. I understand. Well, we can make those arguments as well under Rule 12b-6 in a motion to dismiss. There are some specifics, aren't there? There are in that complaint some dates and some specifics about events. So wouldn't the more appropriate course of action from the district court have been to wend her way through this 16-page complaint, determine what's in and what's out, rather than dismiss the entire thing? I understand, Your Honor. And that's why I... Not whether you understand. Do you agree or do you disagree? I disagree because what I'm urging you is the Fourth Circuit takes a position. I don't have any. Even if you can find something in the midst of a particularly inaptly pleaded complaint, you still may take that into consideration. It's not the judge's job to winnow through the complaint and find issues because if it's that difficult, then actually the judge is trenching upon the loss of her impartiality. Did the judge turn down a request for appointment of counsel? Yes, yes. And you would agree... That may have helped. And you would agree that our caseload makes clear that a district court is going to review a pro se complaint differently from how that district judge is going to review counsel? Certainly, certainly. I have no further questions, gentlemen. Thank you, sir. Thank you. Are you next, Mr. Foreman? I am. I feel a shiver that you're asking me that question. May it please the court, I am Sam Foreman and I represent the appellees Najee, Cuttrall, Thornley, and Nagel. Given that I only have five minutes, I'm going to sort of dispense with how I was going to proceed. Great. So I'll ask you a question. You can see he needs little encouragement. So here's my question to you. Do you concede that exhaustion occurred with regard to the medical defendants prior to the filing of the second amended complaint? Yes. With regard to my medical defendants, Ms. Neal's client is in a different position. Yeah. With regard to all of mine, seven grievances, exhausted within 90 days. Yes. Okay. So why don't we proceed then? Why can't we proceed? Because we have a bright line rule that says exhaustion must occur prior to the filing of the complaint. Where is that bright line rule set down in any opinion of the Supreme Court or of this court? That's a good question. I think it's a great question. I've done a lot of work on that excellent question. I've taken it so for granted, I don't have a ready answer other than to point you to nine. Well, I would at least like to ask you if you think that that bright line position you're taking is in some conflict with Jones versus Bach. No, I don't think so at all. Why not? Well, Jones versus Bach really should only be seen for the proposition for which the Supreme Court ruled that it's not the plaintiff's obligation to prove that he exhausted, but the defendant's obligation to bring it forward. Yes, but the court also said through the Chief Justice speaking for a unanimous court that the language you're relying upon was essentially boilerplate. That was how he characterized it. So aren't you suggesting that what we should do is rely heavily on a Supreme Court decision that calls boilerplate to conclude that normal procedures concerning supplementation or amendment of complaints under Rule 15 don't apply to Garrett? I don't agree with the pejorative manner in which you would characterize the description. I'm merely quoting the Chief Justice. I take him for his word. I understand. But that it is boilerplate and that it is well-established does not necessarily mean that it is a bad rule. Well, let me ask you this question. In this posture, let's say that the supposition that you've made, it should have been dismissed. Clearly, if it's dismissed, it should be dismissed without prejudice. I absolutely agree with that. Allow a replete. I absolutely agree with that. OK. So we have a third amended complaint. Right. And why shouldn't that go forward? And that allows me to get to the first point I wanted to make. And particularly because it's not one that's well addressed in the brief, perhaps due to some pattern blindness on our part, given that we experienced it at the time. If you look at the third amended complaint itself, and I reread it again line by line last night, there is absolutely nowhere in that complaint in which Mr. Garrett says, I have been released from prison. In fact, there are five instances in which he talks about being retaliated against and threatened with the R.H.U., he asks for injunctive relief, and even signs it with an address from S.E.I. Huxdale at the end. And the only suggestion that he has been released from prison in the document that is the third amended complaint is that a handwritten address from Darby P.A. is on the bottom. Now, we all knew this, but as an operative complaint, there is nothing in there that would legally give the court a basis upon which to change the status of his incarceration through that pleading. And the fourth amended complaint is very much in the same boat. I'm so sorry. How does that get you off the hook? I don't think it gets me off the hook in any particular way, because I don't think I've perceived that we are particularly on the hook. Let me say this. Well, let me be more specific. If he is permitted to replead and there's no exhaustion issue and there's no statute of limitations issue, then what's the issue that precludes him from going forward? I mean, you're not going to use that dirty P word, prolix, are you? No, I don't want to go there. OK. I would absolutely agree with the notion that under the appropriate circumstances, an amendment could be permitted within the district court's discretion to remedy a problem like failure to absorb. What about in these circumstances? In these circumstances, I think not, because it's not as if the plaintiff filed a motion for amendment complaint saying, you know what? You're right. I should have exhausted before I filed this. I could just dismiss my case today and refile it tomorrow and everything will be fine. But can I just file an amendment complaint instead? I don't even think I would object to that. But that's not what he did. Right. But that's also not what the court didn't do what it should have done. Right. Because if there's a premature filing, there's an understanding that you're going to allow an amendment. I absolutely agree. And when the plaintiff in his first complaint, as in this one, states on the first page that exhaustion has not been completed, I would far prefer to see the district court engage in a more searching examination. So thank you. Thank you very much, Mr. Foreman. Ms. Neal. Yes, Your Honor. Good morning. May it please the court. My name is Cassidy Neal. I represent Akeli Shellacotri, M.D., who is in a slightly different circumstance than the other medical defendants in this case, as it is our position that Garrett never exhausted his administrative remedies against her, whether prior to bringing his claims in the first place or subsequently. The grievances that were ultimately exhausted do not relate to Garrett's claims against her, which are specifically tailored to an allegation that she discontinued mental health medications as a psychiatric provider in January of 2014. There's no grievance that's been exhausted to that effect. Was there a grievance filed? Obviously there was, right? I don't believe that there was, Your Honor. And if there was a grievance filed, I apologize. I can't specifically recall. I don't recall there being a grievance filed that specifically addressed Dr. Cotri's conduct. And if, in fact, it was filed, it certainly was not properly appealed through the Secretary's Office of Inmate Grievances. That addendum you just made goes to generally the question I was next going to ask, and that is, first of all, you would agree that what we're required to look to are the Department of Corrections or the institution's specific rules and procedures relative to the filing and disposition of grievances? Yes, correct, Your Honor. The inmates must comply with the specific policies and procedures for exhaustion. In this case, those are the policies of the Pennsylvania Department of Corrections. So do we know, do you know if the Department of Corrections has a rule that requires that someone in Mr. Garrett's situation name each defendant in a particular grievance? The policy does not specifically say name each defendant. Rather, it says that any facts that are relevant to the grievance must be incorporated. And to the extent of the name of the individual, the individual's involvement, the individual's conduct is a fact that is relevant, then it is pertinent. So is it your position that there was nothing in the grievance in the way of factual or vermin for representation that went to an event involving your client? Yes, Your Honor, that is the position. The events listed in the grievances that were exhausted in August of 2000, I'm sorry, April of 2014 relate more generally to the medical claims, specifically the walker that he wanted, the conduct of Dr. Nagy, and some other ancillary allegations. But nothing that specifically related to the mental health care that was being provided to him by Dr. Khatri or her discontinuation of medication, her specific discontinuation of medication. So with that, I believe Garrett's failure to exhaust either prior to bringing the claim or at a later time before filing his second amended or third amended complaint precludes him from proceeding against Dr. Khatri in any respect. Even his release from prison does not eliminate his requirement to comply with the prison litigation reform act. Can I just refer you to one thing?  I have it here that there's one exhausted grievance that mentions Dr. Khatri and it only states that Dr., and I'm sorry for bad pronunciations of both your client and other doctors, but it mentions that Dr. Khatri only states that Dr. Nagy told her to stop Garrett's medication. It's in an exhausted grievance. I can't give you the number now. Let's assume for the moment that that's so. Okay. I know you said it's not, but let's assume for the moment that that's so. Sure. If that's so, given the third amended complaint and the position of your adversary that it's both an amended complaint and a supplemental complaint and that both there is no exhaustion issue and there's no statute of limitations issue, would the claim against your client go forward? No. And I would like to add into some of Mr. Foreman's argument that Garrett's third amended complaint does not include any sort of fact, any sort of a variament, any sort of statement of an occurrence that occurred at a later date to supplement his pleading to reflect that he's been released from prison. And if in fact that was his intention to say the Prison Litigation Reform Act no longer applies to me, I am no longer required to exhaust my administrative remedies prior to bringing this lawsuit. That is something that would have been required to be included in his subsequent pleading, whether amended or supplemental. But I asked you to assume for the moment that it was exhausted. So if you assume for a moment that there is a grievance, it says what we agree it says, you can come to different conclusions as to what that means. Is there an impediment to it going forward? I see that my time's up. May I answer, Your Honor? Please do. Though, because I believe that the law is clear that an inmate plaintiff is required to exhaust their administrative remedies prior to bringing any claims at the outset of the question for the court to consider. I believe that Ahmed states that, and I understand that there are differences in the Ahmed case than this case. But if it were subsequently exhausted, that wouldn't be an impediment, right? I disagree with that. I believe, I believe, Your Honor, that the Prison Litigation Reform Act was in place to require an inmate to exhaust their administrative remedies before bringing suit. That may well have been Congress intent. And I, for what it's worth, have a feeling that that is what they intended. But that's, that has not been made explicit. And certainly it seems that the Supreme Court does not buy it. So what you, what you just made was a policy argument, right? I don't believe it was exclusively a policy argument, Your Honor. And I disagree that the Jones v. Bach case stands for the position that... It's not a direct holding. I agree with you. I'm sorry? It's not a direct holding. That I agree, but it certainly doesn't help you. But the court also specifically states that this is a mandatory requirement that an inmate exhaust their administrative remedies prior to filing suit. And that is included in the Jones v. Bach case. Yeah, but that's never the end of the inquiry, so... Anything further? Thank you very much. Thank you. And we'll have Mr. Berg back for rebuttal. Thank you, Your Honor. Can we start at the end? And just tell us what the, whether the claim against Dr. Cottrey was exhausted? Yes, Your Honor. So this is... Give us some reference point, if you will. This is in our reply brief. It's on page 14, footnote 10. We point this out, but I can give you the appendix numbers. The answer is it was, he did, you, you pointed to the grievance. He raised the grievance and he properly exhausted it. On, in JA 216, you quoted from it. That's the page in the record where he alleges that Dr. Cottrey denied his medication. And on page JA 182, we point out in our footnote that grievance was properly exhausted. So that was going to be my first point. My second related point, record-wise, just to correct one statement... That went all the way through? Excuse me? That was pursued? Yes. I know you mentioned this. It was properly exhausted. And so the JA 216 is the original grievance. And JA 182 is when the final grievance board properly said, we are denying, but these are all properly denied on the merits, seven grievances and including that grievance. And you'll see that on JA 182. The second brief note I just want to make is, the other medical defendant's counsel noted that Garrett did not say that he exhausted, and said that Garrett's third amended complaint on its face said that he did not exhaust. It said the opposite in paragraph five. And fortunately, I don't have the JA number for that. But it's paragraph five of the third amended complaint. He says he did fully exhaust. But next, I'd just like to quickly turn to the point that was made about he didn't allege that he was released on the face of the complaint. I don't think anywhere in the PLRA or in any law,  that they're not a prisoner. And also, Mr. Garrett did tell the court and the parties that he was expecting release. The court closed the case because he was expecting release. He filed an amendment after being released. And after the other side moved to dismiss his third amended complaint, he responded by saying, I'm no longer a prisoner. I'm not subject to the PLRA. So he did put the parties on notice. And my last point, I'd just like to point out here. Well, before you go there, I mean, it seems like everybody concedes. We knew it. It just wasn't in the complaint. I mean, should it matter? Your Honor, I don't think it should matter. I think it would be an overly harsh rule to end an extra textual rule to impose a requirement on a litigant, a pro se litigant, to say that he was not a prisoner when it was clear to every party. I think that goes against the pro se standard. One last question from the bench. If we were writing an opinion, which we'll have to do in this case, if we were writing a precedential opinion, most importantly, more importantly, is it fair to conclude that the opinion should focus almost entirely on the rules, on our procedural rules regime? The response I got from Ms. Neal in asking her about the Supreme Court's statement with respect to the PLRA, we had some difference of opinion, not with respect to the court's holding, but the import of the decision. It seems to me that one thing that has to be conceded is that what the Supreme Court teaches is that where the PLRA has not told us, has not instructed us, where Congress has not instructed us to look for some exception, if you will, then our course has to be to look to the existing rules of procedure. Would you agree with that? I do agree with that, Your Honor, and I'm out of time, but I'll answer your question. I think that's exactly right. And I think the point that Ms. Neal makes about exhaustion being mandatory, exhaustion is a precondition, and there's several statutory preconditions to suit. This court dealt with one in T-Mobile just this last February, and the plaintiff failed that mandatory precondition and could use Rule 15d. The existence of a precondition does not foreclose the ability to fix it. And as the last point, the defendant's position would actually turn Rule 15, which is clearly designed as a tool to reach the merits, into the very impediment that it was designed to avoid. So unless you have any other questions, thank you. Thank you very much, Berg, counsel for the various defendants. We appreciate your helpful arguments today. And the panel will take